U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2022 APR 28 AM 9:27
CLERK
BY ________
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**
**RUTLAND DIVISION**

| | | |
|---|---|---|
| **Amy Mailhiot, individual, on behalf of herself, her minor child, P. M. and all others similarly situated** | ) | Civil Action No. 5:22-cv-91 |
| **Plaintiffs,** | ) | CLASS ACTION COMPLAINT |
| **v.** | ) | JURY TRIAL DEMANDED |
| **Abbott Laboratories, Inc. d/b/a Abbott Nutrition,** | ) | |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Amy Mailhiot ("Plaintiff"), on behalf of herself, her minor child, P.M., and all others similarly situated, files this Class Action Complaint ("CAC") against Defendant Abbott Laboratories, Inc. D/B/A Abbott Nutrition. ("Abbott" or "Defendant"), and in support states the following:

## NATURE OF THE ACTION

1. This is an individual and class action lawsuit by Plaintiffs, and others similarly situated, who purchased Similac, Alimentum, and Elecare Infant formula manufactured, sold and distributed by Defendant. Defendant distributes, markets and sells several infant formulas under the brand names Similac, Alimentum, and EleCare. Several of Defendant's Similac products (identified below) have been shown to be adulterated with Cronobacter sakazakii. The presence of Cronobacter sakazakii in Defendant's Similac, Alimentum, and Elecare products was not disclosed in the products' label, in violation of state and federal law. Plaintiff Amy Mailhiot and the putative classes suffered economic damages due to Defendant's misconduct (as set forth

below) and they seek injunctive relief and restitution for the full purchase price of the Similac product(s) they purchased. Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**JURISDICTION AND VENUE**

2. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiffs are a citizen of a state different from Defendant.

3. This Court has jurisdiction over each Defendant because Defendant is authorized to conduct and does business in Vermont. Defendant has marketed, promoted, distributed, and sold Similac, Alimentum, and Elecare products, including the recalled Products identified below, in Vermont, and Defendant has sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred while residing in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

## THE PARTIES AND CLASS JUSTIFICATION

## PURSUANT TO FED.R.Civ.P. 23

5.      Plaintiffs are citizens and residents of Rutland County, Vermont, and at all times relevant hereto, has been a resident of Rutland County. In or around June 2021, Plaintiff Amy Mailhiot began purchasing Defendant's product at Price Chopper and Walmart retail stores located in and around Rutland, Vermont. At the time of purchase, based on the false and misleading claims by Defendant, Plaintiffs were unaware that Defendant's Similac, Alimentum, and EleCare products may be adulterated with cronobacter sakazakii. Plaintiff Amy Mailhiot purchased the Defendant's products on the assumption that the labeling of Defendant's products were accurate and that the products were unadulterated, safe and effective. Plaintiff Amy Mailhiot would not have purchased Defendant's Similac, Alimentum, and Elecare products had she known there was a risk the products may contain Cronobacter sakazakii. As a result, Plaintiff Amy Mailhiot suffered injury in fact when she spent money to purchase products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

6.      In June 2021, around the time that Plaintiff's infant child, P.M., was born, Plaintiff Amy Mailhiot began purchasing Similac Alimentum for P.M..

7.      Upon information and belief, multiple containers purchased by Plaintiff Amy Mailhiot match the tainted lots identified by the FDA advisory.

8.      Plaintiff's infant child, P.M., consumed the tainted infant formula.

9.      In or around February 2022, Plaintiff's infant child, P.H., became irritable and very sick after consuming the tainted formula necessitating medical intervention.

10.     The Plaintiff's infant child, P.M., was later diagnosed with having cronobacter sakazakii infection as a result of the Defendant's formula.

11. Plaintiff Amy Mailhiot also confirmed that the lot number of the formula consumed by her infant child, P.M., was subject to Defendant Abbott's recall.

12. Defendant ABBOTT LABORATORIES, INC. D/B/A ABBOTT NUTRITION, is a Delaware Corporation with its principal place of business in Abbott Park, Lake County, Illinois. Defendant manufactures, markets, advertises, labels, distributes and sells the recalled products at issue in this litigation.

**INTRODUCTION CLASS JUSTIFICATION**

**PURSUANT TO FED.R.CIV.P. 23**

13. The following infant formulas are manufactured, marketed, and sold by Defendant Abbott Laboratories:

- Similac. Similac is a brand of powdered infant formula produced by Abbott which Abbott promises will "give babies a strong start by helping to keep them fed, happy, and healthy." See Why Similac, https://www.similac.com/why-similac.html (last visited February 18, 2022). According to Abbott, Similac "is the #1 Pediatrician Recommended Brand for Immune Support." *Id.*
- Alimentum. Alimentum is a brand of powdered infant formula produced by Abbott for infants with lactose sensitivity which Abbott claims is "the #1 infant formula brand fed for cow's milk protein allergy in the US." See Alimentum Product Description, https://www.similac.com/products/baby-formula/alimentum-powder/19-8oz-can-4pack.html (last visited February 18, 2022).
- EleCare. Elecare is a brand of powdered infant formula produced by Abbott for infants who cannot tolerate intact or hydrolyzed protein due to conditions such as severe food

allergies or short bowel syndrome. See EleCare Product Information, https://elecare.com/ (last visited February 18, 2022).

13. Abbott distributes these powdered infant formula products both nationwide and internationally.

14. On February 17, 2022, the FDA, in conjunction with the CDC, announced a warning to consumers to not purchase or use Recalled Product, stating: "Do not use recalled Similac, Alimentum and EleCare powdered infant formulas produced in Sturgis, Michigan."[1]

15. As part of the Warning, the FDA Deputy Commissioner for Food Policy and Response stated, "As this is a product used as the sole source of nutrition for many of our nation's newborns and infants, the FDA is deeply concerned about these reports of bacterial infections. We want to reassure the public that we're working diligently with our partners to investigate complaints related to these products, which we recognize include infant formula produced at this facility, while we work to resolve this safety concern as quickly as possible."

16. Specifically, the FDA announced that it is investigating consumer complaints of Cronobacter sakazakii and Salmonella Newport infections connected to powdered infant formula products produced by Abbott.

17. The FDA has so far linked two infant deaths and multiple illnesses to Cronobacter sakazakii contamination of its Similac, Alimentum, and EleCare powdered infant formulas produced in its Sturgis, Michigan plant.

18. The initial recall notice included Similac, Alimentum, and EleCare powdered infant formula with the following characteristics:

[1] https://www.fda.gov/consumers/powdered-infant-formula-recall-what-know (last visited March 16, 2022)

- the first two digits of the code are 22 through 37; and
- the code on the container contains K8, SH or Z2; and
- the expiration date is 4-1-2022 (APR 2022) or later.

19. On February 18, 2022, Abbott announced a recall of its powdered infant formulas. However, the recall does not include a refund, reimbursement, or replacement for consumers who purchased or used Recalled Products.[2]

20. On February 28, 2022, the Recall was expanded to include one lot of Similac PM 60/40 (Lot #27032K80 (can) / Lot # 27032K800 (case)), which was also manufactured in Abbott's Sturgis, Michigan facility.

21. These products may contain Cronobacter sakazakii bacteria.

22. Per the CDC website, Cronobacter sakazakii is a germ that can live in very dry places. The germs can live in dry foods, such as powdered infant formula.

23. Cronobacter bacteria can get into formula powder if contaminated raw materials are used to make the formula or if the formula powder touches a contaminated surface in the manufacturing environment.

24. Cronobacter bacteria can cause severe, life-threatening infections, meningitis, and symptoms include: poor feeding, irritability, temperature changes, jaundice, grunting, and abnormal body movements. As set forth by the Centers for Disease Control and Prevention:

> Infants (<12 months old): In infants, Cronobacter usually causes sepsis or severe meningitis. Some infants may experience seizures. Those with meningitis may develop brain abscesses or infarcts, hydrocephalus, or other serious complications that can cause long-term neurological problems. The mortality rate for Cronobacter meningitis may be as high as 40%.[3]

---

[2] Recall Notice, https://www.similacrecall.com/us/en/home.html (last visited March 16, 2022)
[3] CDC.gov, https://www.cdc.gov/cronobacter/technical.html (last accessed on March 25, 2022).

Other sources have described the mortality rate reaching as high as 80%.[4]

25.     The FDA also received one complaint of an infant with Salmonella infection who consumed formula from the Sturgis facility. However, they later concluded there is not enough information available to definitively link the illness with the recalled infant formula.

26.     The FDA conducted several inspections, which uncovered numerous, egregious violations of statutes and regulations set forth herein in Defendant's manufacture, processing, packing, and holding of Similac, Alimentum and EleCare powdered infant formulas.

27.     As documented in the FDA Form 483 issued on September 24, 2019, Defendants failed to test a representative sample of an infant formula production aggregate of powered infant formula at the final product stage and before distribution to ensure that the production aggregate met the required microbiological quality standards.

28.     Subsequent inspections establish a pattern of Defendant's disregard of reasonable, responsible industry practices, as well as applicable statutes and regulations, with respect to manufacture, processing, packing, and holding of Similac, Alimentum and EleCare powdered infant formulas.  As documented in the FDA Form 483 issued on September 24, 2021:

    a.  Defendant failed to maintain a building used in the manufacture, processing, packing, or holding of infant formula in a clean and sanitary condition; and

    b.  Defendant personnel working directly with infant formula, its raw materials, packaging, or equipment or utensil contact surfaces did not wash hands thoroughly in a hand washing facility at a suitable temperature after the hands may have become soiled or contaminated.

---

[4] Norberg S, Stanton C, Ross RP, Hill C, Fitzgerald GF, Cotter PD. Cronobacter spp. in powdered infant formula. J Food Prot. 2012 Mar;75(3):607-20. doi: 10.4315/0362-028X.JFP-11-285. PMID: 22410240.

29.    As documented in the FDA Form 483 issued on March 18, 2022:

   a.    Defendant failed to set in place and/or maintain a system of process controls that cover all stages of infant formula processing to ensure the product does not become adulterated due to the presence of microorganisms (such as cronobacter) in the formula or in the processing environment;

   b.    Defendant further failed to ensure that all surfaces that contacted infant formula were maintained to protect infant formula from being contaminated with microorganisms, (such as cronobacter);

   c.    Defendant failed to document any determination as to whether a hazard to health exists due to contamination with microorganisms (such as cronobacter);

   d.    Defendant's personnel that worked directly with infant formula, its raw materials, packaging, equipment, or utensil contact surfaces failed to wear necessary protective apparel.

30.    Additionally, Abbott's own records indicate that, in June 2020, it destroyed products because of a previous cronobacter contamination.

31.    This establishes that Abbott, at various times:

   a.    Had knowledge that Cronobacter contaminated its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant;

   b.    Failed to adequately test for Cronobacter in its powdered infant formula;

   c.    Failed to ensure numerous controls were in place to prevent contamination of its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant.

32.     The results of these investigations demonstrate a pattern of Defendant not only failing to take adequate, reasonable measures to protect the health and lives of infants consuming its powered infant formula products, but also failing to take even the common sense measures, such as washing hands, upon learning of the risk of contamination of its products with microorganisms.

33.     Defendant demonstrates an unwillingness or incapability to learn from not only from the lessons of its own misconduct, but also from the historical misconduct of others engaged in the manufacture, processing, packing, and holding of infant formula that resulted in widespread, serious and often fatal harm to the same especially vulnerable population, such as the "swill milk" scandal during the 1850s in New York City.[5] Thousands of infants were reported to have died from bacterial infection after ingesting contaminated milk sold to their poor and middle class parents by unscrupulous distillers who fed the grain distillation byproduct to dairy cattle kept in fetid conditions.

34.     More recently, in September 2008, the deaths of infants and sickness of over 300,000 babies were traced to contamination of infant formula with melamine believed to have been used as a protein additive.[6]

35.     Defendant's conduct therefore represents a repeated, conscious disregard for the safety and lives of among the most vulnerable individuals—infants—that rises to the level of recklessness, wantonness, and malice.

---

[5] Tyler Moss, "The 19th-Century Swill Milk Scandal That Poisoned Infants With Whiskey Runoff," AtlasObscura.com (November 27, 2017) available at https://www.atlasobscura.com/articles/swill-milk-scandal-new-york-city (last accessed on Mar. 25, 2022).

[6] Gossner CM, Schlundt J, Ben Embarek P, Hird S, Lo-Fo-Wong D, Beltran JJ, Teoh KN, Tritscher A. The melamine incident: implications for international food and feed safety. Environ Health Perspect. 2009 Dec;117(12):1803-8. doi: 10.1289/ehp.0900949. Epub 2009 Aug 6. PMID: 20049196; PMCID: PMC2799451.

36.    Again, in June 2021, around the time that Plaintiff's infant child was born, Plaintiff began purchasing Similac Alimentum for her infant child.

37.    Upon information and belief, multiple containers purchased by Plaintiff match the tainted lots identified by the FDA advisory.

38.    Plaintiff's infant child, P.M., consumed the tainted infant formula.

39.    In or around February 2022, Plaintiff's infant child, P.M., became irritable and very sick after consuming the tainted formula necessitating medical intervention.

40.    The Plaintiff's infant child, P.M., was later diagnosed with having cronobacter sakazakii infection as a result of the Defendant's formula.

41.    Plaintiff also confirmed that the lot number of the formula consumed by her infant child, P.M., was subject to Defendant Abbott's recall.

42.    As a direct and proximate result of Plaintiff's infant child, P.M., ingesting the contaminated formula, Plaintiff Amy Mailhiot and her infant child, P.M., have suffered damages in the past and will continue in the future.

## CLASS ALLEGATIONS

43.    Plaintiffs bring this action on behalf of himself and all other similarly situated class members (the "Class" or "Classes") pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class and/or Sub-Classes against Defendant for violations of Vermont state laws and/or similar laws in other states:

### Multi-State Class Action

All consumers who purchased any Similac, Alimentum, and EleCare Product in the United States of America and its territories from April 1, 2021 to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Similac, Alimentum, and EleCare. Also excluded from this Class

are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

44. In the alternative, Plaintiff Amy Mailhiot brings this action on behalf of herself and all other similarly situated Vermont consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Sub-Classes:

**Vermont Sub-Class**

All consumers who purchased any Similac, Alimentum, and Elecare Formula in the State of Vermont from April 1, 2018 to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Similac, Alimentum, and EleCare formula. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

45. Plaintiff Amy Mailhiot reserves the right to modify these definitions.

46. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff Amy Mailhiot is informed and believes that the proposed Class/Sub-Classes contains thousands of purchasers of Defendant's Similac, Alimentum, and EleCare Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

47. Plaintiff Amy Mailhiot's claims are typical to those of all Class members because members of the Class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied each and every Similac, Alimentum, and EleCare Product. Plaintiff Amy Mailhiot is advancing the same claims and legal theories on behalf of himself and all members of the Class/Sub-Class.

48.     Plaintiff Amy Mailhiot's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff Amy Mailhiot and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

(a)   whether Defendant's Products contained Cronobacter bacteria;

(b)   whether Defendant's omissions are true, or are misleading, or objectively reasonably likely to deceive;

(c)   whether the alleged conduct constitutes violations of the laws asserted;

(d)   whether Defendant's alleged conduct violates public policy;

(e)   whether Defendant's engaged in false or misleading advertising; and

(f)   whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss.

49.     Plaintiff Amy Mailhiot and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff Amy Mailhiot have retained counsel experienced in complex litigation and class actions. Plaintiff Amy Mailhiot's counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiff Amy Mailhiot intends to prosecute this claim vigorously. Plaintiff Amy Mailhiot has no adverse or antagonistic interests to those of the Class, nor are Plaintiff subject to any unique defenses.

50.     A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff Amy Mailhiot and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would

thus be virtually impossible for Plaintiff Amy Mailhiot and Class members, on an individual basis, to obtain meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff Amy Mailhiot knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

51. The Class also may be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

52. Plaintiff Amy Mailhiot seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above and requiring Defendant to provide a full refund of the purchase price of the Defendant's Similac, Alimentum, and EleCare Products.

53. Unless a Class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff Amy Mailhiot and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiffs, the Multi-State Class and All State Classes)**

54. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

55.     As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiffs and members of the Classes when they purchased the Defendant's Similac, Alimentum, and EleCare Products.

56.     In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Classes.

57.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

58.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

59.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of Defendant's Similac, Alimentum, and EleCare Products to Plaintiffs and members of the Classes.

60.     Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

61.     The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the Classes.

62.     Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Classes all wrongful or inequitable proceeds received by them.

63.     Finally, Plaintiffs and members of the Classes may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

**SECOND CAUSE OF ACTION**
**Negligent Misrepresentation/Omission**
**(On Behalf of Plaintiffs, the Multi-State Class and All State Classes)**

64. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

65. Through their labeling and advertising, Defendant made representations to Plaintiff sand the Class members concerning the safety of their Similac, Alimentum, and EleCare Products.

66. Defendant has a duty to provide accurate information to consumers with respect to the ingredients identified in Defendant's Similac, Alimentum, and EleCare Products as detailed above.

67. Additionally, Defendant has a duty to not make false representations with respect to the safety of their Products.

68. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Products as detailed above.

69. Such failures to disclose on the part of Defendant amount to negligent omission and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

70. Plaintiffs and the other members of the Classes reasonably relied upon such representations and omissions to their detriment.

71. By reason thereof, Plaintiffs and the other Class members have suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
**Breach of Express Warranty**
**(On Behalf of Plaintiffs, the Multi-State Class and All State Classes)**

72. Plaintiffs incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

73. As detailed above, Defendant, through its written literature, packaging and labeling, and written and media advertisement, expressly warranted that the Similac, Alimentum, and EleCare Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

74. Plaintiffs and the other Class members read and relied on these express warranties provided by Defendant in the packaging and written advertisements.

75. Defendant breached its express warranties because Similac, Alimentum, and EleCare Products were defective and not reasonably safe for their intended use.

76. Defendant knew or should have known that the Similac, Alimentum, and EleCare Products did not conform to their express warranties and representations and that, in fact, the Products are not safe and pose serious health risks because they contain Cronobacter sakazakii.

77. Plaintiffs and the other Class members have suffered harm on account of Defendant's breach of its express warranty regarding the fitness for use and safety of these Products and are entitled to damages to be determined at trial.

## FOURTH CAUSE OF ACTION
**Breach of Implied Warranty**
**(On Behalf of Plaintiffs, the Multi-State Class and All State Classes)**

78. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

79.    Because the Similac, Alimentum, and EleCare Products contained Cronobacter sakazakii, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such Infant Formula Products are used.

80.    Plaintiffs and members of the Classes purchased these Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

81.    The Defendant's Similac, Alimentum, and EleCare Products were not altered by Plaintiffs or members of the Classes.

82.    Plaintiffs and members of the Classes were foreseeable users of the Products.

83.    Plaintiffs and members of the Classes used the Products in the manner intended.

84.    As alleged, the Defendant's Similac, Alimentum, and EleCare Products were not adequately labeled and did not disclose that they contain harmful Cronobacter sakazakii.

85.    The Products did not measure up to the promises or facts stated in the written literature, media advertisement and communications by and from Defendant.

86.    Defendant impliedly warranted that the Products were merchantable, fit and safe for ordinary use.

87.    Defendant further impliedly warranted that the Products were fit for the particular purposes for which they were intended and sold.

88.    Contrary to these implied warranties, the Products were defective, unmerchantable, and unfit for their ordinary use when sold, and unfit for the particular purpose for which they were sold.

89.    By reason thereof, Plaintiffs and the other Class members have suffered damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Strict Product Liability – Failure to Warn**
**(On Behalf of Plaintiffs)**

90. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

91. Defendant knew or should have known that the Defendant's Similac, Alimentum, and EleCare Products contained Cronobacter sakazakii.

92. Defendant had a duty to warn Plaintiffs about the presence of Cronobacter sakazakii in their Products.

93. In addition, Defendant had a duty to warn Plaintiffs about the dangers of the presence of Cronobacter sakazakii in their Products.

94. Defendant knew that the risk of Cronobacter sakazakii infection from use of its products was not readily recognizable to an ordinary consumer and that consumers would not inspect the product for Cronobacter sakazakii content.

95. Defendant did not warn Plaintiffs that Defendant's Similac, Alimentum, and EleCare Products contain Cronobacter sakazakii or about the dangers of the presence of Cronobacter sakazakii bacteria in their Products.

96. Plaintiffs suffered damages by purchasing the Defendant's Similac, Alimentum, and EleCare Products in a manner promoted by Defendant, and in a manner that was reasonably foreseeable by Defendant. Plaintiffs would not have purchased Defendant's Similac, Alimentum, and EleCare Products had they known they contained Cronobacter sakazakii bacteria.

97. Plaintiffs were justified in their reliance on Defendant's labeling and advertising of the product for use as a safe Infant Formula.

98. Plaintiffs have suffered damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**Strict Product Liability – Manufacturing Defect**
**(On Behalf of Plaintiffs)**

99. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

100. The Defendant's Similac, Alimentum, and EleCare Products contained a manufacturing defect when they left the possession of Defendant. Specifically, the Products differ from Defendant's intended result or from other lots of the same product line because they contain Cronobacter sakazakii bacteria.

101. Plaintiffs used the Products in a way that was reasonably foreseeable to Defendant.

102. As a result of the defects in the manufacture of the Defendant's Similac, Alimentum, and EleCare Products, Plaintiffs suffered damages.

103. Accordingly, Plaintiffs suffered damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENCE**
**(On Behalf of Plaintiffs, the Multi-State Class and All State Classes)**

104. Plaintiffs repeat and reallege all the allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

105. Defendant owed a duty to Plaintiffs to employ reasonable care in its manufacturing, distribution, packaging, and sale of its Similac, Alimentum, and EleCare Products, inclusive of providing appropriate and reasonable controls in relation to preventing the contamination of these products together with adequate warnings of the risk of contamination with a dangerous microorganism, such as Cronobacter sakazakii.

106. A reasonable manufacturer in Defendant's shoes would have understood that the Similac, Alimentum, and EleCare Products originating from its Sturgis, Michigan plant were

defective and unreasonably dangerous, causing infection of dangerous microorganisms, such as Cronobacter sakazakii and other pathogens.

107. Moreover, a reasonable manufacturer in Defendant's shoes, would have known of the risk of contamination to its Similac, Alimentum, and EleCare Products originating from its Sturgis, Michigan plant and would have warned Plaintiffs and those similarly situated of this risk.

108. Defendant's duty, if fulfilled, would have prevented the risk that Defendant's Similac, Alimentum, and EleCare Products would become contaminated with a dangerous microorganism, such as Cronobacter sakazakii.

109. Defendant, however, breached this duty.

110. As a result of this breach of duty, Plaintiffs and the class suffered economic damages.

111. Additionally, as a result of Defendant's breach of duty, Plaintiff Amy Maihiot's infant child, P.M., suffered physical injury and pain and suffering.

112. Accordingly, Plaintiffs and Class Members suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## NEGLIGENCE PER SE
## (By Plaintiffs and Vermont Class against Defendant)

113. Plaintiffs repeat and reallege all the allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

114. As documented in the FDA Form 483 issued on September 24, 2019, Defendants failed to test a representative sample of an infant formula production aggregate of powered infant formula at the final product stage and before distribution to ensure that the production aggregate met the required microbiological quality standards.

115. As documented in the FDA Form 483 issued on September 24, 2021, Defendant failed to maintain a building used in the manufacture, processing, packing, or holding of infant formula in a clean and sanitary condition.

116. As documented in the FDA Form 483 issued on September 24, 2021, Defendant personnel working directly with infant formula, its raw materials, packaging, or equipment or utensil contact surfaces did not wash hands thoroughly in a hand washing facility at a suitable temperature after the hands may have become soiled or contaminated.

117. As documented in the FDA Form 483 issued on March 18, 2022, Defendant failed to set in place and/or maintain a system of process controls that cover all stages of infant formula processing to ensure the product does not become adulterated due to the presence of microorganisms, including cronobacter, in the formula or in the processing environment.

118. As documented in the FDA Form 483 issued on March 18, 2022, Defendant further failed to ensure that all surfaces that contacted infant formula were maintained to protect infant formula from being contaminated with microorganisms, including cronobacter.

119. As documented in the FDA Form 483 issued on March 18, 2022, Defendant failed to document any determination as to whether a hazard to health exists due to contamination with microorganisms, including cronobacter.

120. As documented in the FDA Form 483 issued on March 18, 2022, Defendant's personnel that worked directly with infant formula, its raw materials, packaging, equipment, or utensil contact surfaces failed to wear necessary protective apparel.

121. The conduct set forth herein, including that documented in the FDA Form 483 reports represent Defendant's conduct in violation of the following statutes or regulations that

caused the plaintiffs' injury, including the risk of infection and infection of life-threatening microorganisms:

a. 21 U.S.C. § 331 - "The following acts and the causing thereof are prohibited: (a) The introduction or delivery . . . of any food . . . that is adulterated or misbranded. (b) The adulteration or misbranding of any food . . . .(g) The manufacture . . . of any food . . . that is adulterated or misbranded."[7]

b. 21 CFR § 106.5 (failing to maintain good manufacturing practices that are to be used in, and the facilities or controls that are to be used for, the manufacture, processing, packing, or holding of infant formula).[8]

c. 21 CFR § 106.10 (failing to ensure personnel washed hands)

d. 21 CFR § 106.20(a) (failing to maintain building in a clean, sanitary condition)

e. 21 CFR § 106.30(d) (failing to maintain instruments used to measure, regulate, control parameter)

f. 21 CFR § 106.30(e)(5) (failing to monitor the temperature in thermal processing equipment at a frequency as is necessary to maintain temperature control)

---

[7] See   21 U.S.C. § 342 (A food shall be deemed to be adulterated (1) If it bears or contains any poisonous or deleterious substance which may render it injurious to health . . . or (4) if it has been prepared, packed, or held under insanitary conditions . . . .); and 21 U.S.C. § 343 (A food shall be deemed to be misbranded . . . if (1) its labeling is false or misleading. . . ).

[8] See 21 CFR 106.5(b) (The failure to comply with any regulation in this subpart in the manufacture, processing, packing, or holding of an infant formula shall render such infant formula adulterated under section 412(a)(3) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 350a(a)(3)) . . . .)

g. 21 CFR § 106.30(g) (failing to install a filter capable of retaining particles 0.5 micrometer or smaller when compressed gas is used at a product filling machine).

122. Under 21 U.S.C. § 350a, an infant formula, including an infant formula powder, shall be deemed to be adulterated if…such infant formula does not meet the quality factor requirements prescribed by the Secretary under subsection (b)(1), or (3) the processing of such infant formula is not in compliance with the good manufacturing practices and the quality control procedures prescribed by the Secretary under subsection (b)(2).

123. The injury caused to plaintiffs by Defendant's conduct, which violated these statutes and regulations, was the type of injury that the statutes and regulations were designed to prevent.

124. Additionally, plaintiffs were members of the class of persons these statutes and regulations were intended to protect. Indeed, as set forth in 21 C.F.R. § 106.5, "compliance with these provisions is necessary to ensure that such infant formula … is manufactured in a manner designed to prevent its adulteration.

125. As a result of Defendant's conduct in the manufacture of the Defendant's Similac, Alimentum, and EleCare Products violating the foregoing statutes and regulations, Plaintiffs and the other Class members suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of herself, her minor child, P.M., and all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff Amy Mailhiot and their counsel to represent the Class/Sub-Classes, and requiring Defendant to bear the costs of class notice;

B.    An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

C.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

D.    An order requiring Defendant to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising in violation of the above-cited authority, plus pre- and post-judgment interest thereon (Plaintiff does not seek monetary damages pursuant to her Ninth Cause of Action);

E.    An order requiring Defendant to disgorge any ill-gotten benefits received from Plaintiffs and members of the Class/Sub-Classes as a result of any wrongful or unlawful act or practice;

F.    An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

G.    An order awarding attorneys' fees and costs to Plaintiffs and the Class/Sub-Classes; and

H.    An award of punitive damages for all such allowable claims; and

I.    An order providing for all other such equitable relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

DATED this 27th day of April, 2022 in the City of Rutland, County of Rutland, and State of Vermont.

By: Plaintiff, Amy Milhoit

Thomas C. Bixby, Esq.
Law Offices of Thomas C. Bixby, LLC
152 Woodstock Ave, Ste. B
P.O. Box 6856
Rutland, VT 05701
802-775-3229
tcblawvt@gmail.com

E. Samuel Geisler, *pro hac vice* to be submitted
Email: sgeisler@awkolaw.com
Caitlyn Prichard Miller, *pro hac vice* to be submitted
Email: cmiller@awkolaw.com
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010